668 A.2d 97

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 27, 1995.

Decided Nov. 22, 1995.

386

388

Lee Mandell, for William Johnson.

Catherine Marshall, Karen A. Brancheau, Robert A. Graci, Attorney General's Office, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION OF THE COURT*

CASTILLE, Justice.

This is a direct appeal from a sentence of death [1] imposed by the Court of Common Pleas of Philadelphia County. Following a jury trial, appellant was convicted of the first degree murder [2] of John McDonald and of criminal conspiracy to commit murder,[3] possession of an instrument of crime [4] and recklessly endangering another person.[5] The jury found that

1. 42 Pa.C.S. § 9711(h)(1).
2. 18 Pa.C.S. § 2502(a).
3. 18 Pa.C.S. § 903.
4. 18 Pa.C.S. § 907.
5. 18 Pa.C.S. § 2705.

the two aggravating circumstances [6] outweighed the one mitigating circumstance,[7] and returned a sentence of death. Post-verdict motions were denied and the trial court imposed the death sentence. No additional penalty was imposed for the remaining convictions.

## SUFFICIENCY OF THE EVIDENCE

█ Appellant first argues that the evidence was insufficient to support the conviction for first degree murder because appellant did not possess the specific intent to kill the victim. Rather, appellant claims he only had the intent to injure him, but that death occurred as a result nonetheless. As in all cases in which the death penalty has been imposed, this Court is required to independently undertake a review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The standard for reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 435, 515 A.2d 531, 533–34 (1986). After a review of the record, we find that the evidence is sufficient to support appellant's convictions.

Sonya Carr, the victim's fiance, testified at trial that in the early morning hours of June 10, 1991, in the 4800 block of Marion Street in Philadelphia, Pennsylvania, she was sitting on the porch of a house owned by her fiance's uncle when one of two men who were sitting on the porch with her, either

6. The aggravated circumstances were that in the commission of the offense, appellant had knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7); and that appellant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9).

7. The mitigating circumstance was that appellant was only twenty-five years old at the time of the offense. 42 Pa.C.S. § 9711(e)(4).

Billy or Rocky,[8] "grabbed her butt." (N.T. 5/27/92, a.m. at 54). When Ms. Carr told her fiance, the victim John McDonald, about the incident, McDonald became upset and went in search of Rocky or Billy. The victim found Rocky on a neighbor's porch and began to argue with him about the porch touching incident. Lamont "Wayne" Bruce, one of appellant's co-defendants who was at the neighbor's house, told the victim and Rocky to leave his aunt's house because it was "disrespectful." The victim's uncle, seeing the argument at the neighbor's house, walked over to the neighbor's house, pulled the victim away, and walked with him a bit to calm him down.

Ms. Carr further testified that while McDonald and his uncle were walking, the police arrived on the scene to investigate. At the same time, appellant, Lamont Bruce and Robert Holmes, another co-defendant, waited inside Lamont Bruce's house across the street from the scene until the police left the area. After the police departed, appellant and Robert Holmes returned to the victim's uncle's porch where Ms. Carr was standing, and one of the men—the witness did not know which one—said that "he didn't give a fuck about his bitch, and the man was going to die tonight," (N.T. 5/27/92, a.m. at 59). He also asked Ms. Carr, "Where is your punk boyfriend now?" (N.T. 5/27/92, p.m. at 56).

Nancy Jennings McDonald, the victim's aunt, also testified regarding the incident on the porch and the ensuing argument. She testified that after Ms. Carr was told that the victim was going to die, one of the men pointed a gun at Ardell McDaniel, a neighbor who was standing nearby, mistakenly believing that McDaniel was the intended victim, McDonald. Co-defendant Lamont Bruce told him, however, that McDaniel was not the person they were looking for and the gun was lowered.[9]

8. Although the trial court's opinion identifies Billy as appellant, all of the witnesses who observed the incident on the porch testified that Billy and appellant were different people. Neither Billy or Rocky were further identified at trial.

9. Mrs. McDonald could not recall which of the three men brandished the firearm.

Mrs. McDonald further testified that when the uncle came back down the street toward the uncle's home, Lamont Bruce said to him, "I hope your nephew is ready." As the victim, who had been walking a short distance behind, neared where his uncle, Lamont Bruce and Robert Holmes were standing, Lamont Bruce said to appellant, "there he is." In response to that signal, the victim's aunt testified that she observed appellant run onto the sidewalk from between parked cars and shoot the victim six times in the back, including one shot to the back of the head.[10]

Francis Bruce, a neighbor, also testified concerning the initial argument between the victim and co-defendant Lamont Bruce. She further testified that after the argument, Lamont Bruce made a phone call and that shortly thereafter, she saw appellant and Robert Holmes arrive and talk to Lamont Bruce. She also testified that she saw appellant point the gun at Ardell McDaniel and ask Lamont Bruce if McDaniel was the person for whom they were looking, and that, as the victim approached where appellant and his co-defendants were standing, she saw appellant shoot the victim.

Ardell McDaniel also testified that he saw appellant shoot the victim. He further testified that appellant and his two co-defendants then fled the scene in a white Chevy Blazer. McDaniel followed the vehicle for several blocks until shots were fired at him from the passenger side of the vehicle. Appellant was arrested several days later.[11]

■■■ Evidence is sufficient to sustain a conviction for first degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546,

10. Paul McDonald, the victim's uncle, also testified at trial concerning the fight prior to the shooting and the shooting itself. His version was consistent with the testimony of Mrs. McDonald.

11. Appellant's co-defendants were convicted of third degree murder and conspiracy. Co-defendant Holmes was also convicted of possession of an instrument of crime.

394

550, 599 A.2d 624, 626 (1991). Specific intent to kill can be inferred by the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Butler*, 446 Pa. 374, 378, 288 A.2d 800, 802 (1972). The evidence the Commonwealth presented established that appellant, with malice aforethought, intentionally shot the victim six times in the back and head, causing his death. Therefore, the evidence is clearly sufficient to sustain appellant's conviction for first degree murder. We find appellant's claim challenging the sufficiency of the evidence to be meritless.

## WEIGHT OF THE EVIDENCE

Appellant's second claim is that the verdict was against the weight of the evidence. The weight of the evidence is exclusively for the finder of fact who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Jackson*, 506 Pa. 469, 475, 485 A.2d 1102, 1104 (1984); *Commonwealth v. Dreibelbis*, 493 Pa. 466, 469, 426 A.2d 1111, 1113 (1981). Furthermore, an appellate court is barred from substituting its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we may reverse the decision of the lower court only when the verdict is so contrary to the evidence as to shock the conscience. *Commonwealth v. Walker*, 540 Pa. 80, 93–95, 656 A.2d 90, 97, *cert. denied*, —— U.S. ——, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995), *citing Commonwealth v. Whitney*, 511 Pa. 232, 239, 512 A.2d 1152, 1155 (1986).

Appellant does not specify why the verdict is against the weight of the evidence other than to point out how the testimony elicited from his witnesses contradicted the testimony of the Commonwealth witnesses. The jury's decision to believe the testimony of four Commonwealth eyewitnesses that they saw appellant shoot the victim instead of the testimony of five defense witnesses who came out of their homes *after* hearing shots that they did not recall seeing appellant on the street does not shock the conscience. Therefore, this claim fails to provide a basis for relief.

## BATSON CLAIM

Appellant next argues that the Commonwealth violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using its peremptory challenges to selectively exclude prospective black jurors from the final jury panel.[12] At the outset, a review of the available record fails to reveal that the defense raised a *Batson* claim at any time during voir dire. *See Commonwealth v. Abu–Jamal,* 521 Pa. 188, 195–96, 555 A.2d 846, 849 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990) (failure to allege discriminatory use of peremptory challenges during voir dire results in waiver of *Batson* claim). The record also fails to reflect a finding by the trial court during voir dire that the defense established a prima facie showing that the Commonwealth was using its peremptory challenges to exclude potential black jurors, which would arguably suggest that such a challenge was made. However, for reasons which do not appear in the record, the trial court *sua sponte* asked the Commonwealth *mid-trial* to explain the reasoning behind its use of peremptory strikes.

In order to establish prima facie case on *Batson* claim, defendant must make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury. *Commonwealth v. Simmons,* 541 Pa. 211, 230–32, 662 A.2d 621, 631 (1995), *citing, Commonwealth v. Spence,* 534 Pa. 233, 246, 627 A.2d 1176, 1182–83 (1993). The record here only contains notes of testimony for two days of the voir dire procedure, May 21, 1992 and May 26, 1992. Only five jurors were empaneled during those two days. The record does not reflect and appellant does not provide this Court with information regarding the racial composition of the panel or the jury, or the race of all of the jurors stricken by the Commonwealth

12. Appellant did not raise this issue in post-verdict motions and it is therefore technically waived. Pa.R.A.P. 302(a). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra,* 500 Pa. at 26, 454 A.2d at 942.

or the defense. It is appellant's responsibility to ensure that any relevant transcripts be ordered and filed as part of the original record. Pa.R.A.P. 1911. To the extent the record is deficient to review appellant's claim, appellant had the opportunity to request that the omission be corrected by the trial court. Pa.R.A.P. 1926. Because appellant failed to do so, we do not have a complete record before us from which to determine whether a prima facie case was even established. Therefore, this claim does not merit further review.[13]

## *SUPPRESSION OF WITNESSES' IDENTIFICATIONS*

Appellant next contends that the eyewitnesses' in-court identifications of appellant should have been suppressed because all prior out-of-court identifications were the result of reviewing photographic arrays that were so suggestive as to taint the in-court identifications.[14] A photographic identifica-

13. The Commonwealth's reasons for striking the seven black prospective jurors were that: the Commonwealth believed the first juror to be irresponsible because she had been unemployed for ten years and had five children under the age of fifteen; the second juror had been dismissed from a job for willful misconduct; the third juror equivocated on the death penalty to the extent of shouting at the prosecutor on the issue; the fourth juror was nineteen and the prosecutor stated that he would never select a juror under the age of twenty-one for a capital case; the fifth juror's father was serving a prison term on a murder conviction; the sixth juror equivocated on the death penalty; and the seventh juror equivocated on the death penalty and even though her daughter had been brutally murdered. (N.T. 5/27/92, p.m. at 118–122). We find no basis that would warrant a disturbance of the trial court's ruling that the Commonwealth's reasons for exercising the strikes were racially neutral. *Commonwealth v. Bond,* 539 Pa. 299, 310, 652 A.2d 308, 313 (1995) (upholding as racially neutral strikes of juror who equivocated on death penalty and juror who had a relative who had been convicted of murder); *Commonwealth v. Griffin,* 537 Pa. 447, 458, 644 A.2d 1167, 1173 (1994) (upholding as racially neutral strike of juror who had a questionable employment record); *Commonwealth v. Hardcastle,* 519 Pa. 236, 245, 546 A.2d 1101, 1105 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990) (upholding as racially neutral use of strikes against juror who was young and unemployed and juror who had a relative who had been killed in violent crime).

14. Appellant did not raise this issue in post-verdict motions and it is therefore technically waived. Pa.R.A.P. 302(a). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra,* 500 Pa. at 26, 454 A.2d at 942.

tion is unduly suggestive when the procedure creates a substantial likelihood of misidentification. *Commonwealth v. Hughes,* 521 Pa. 423, 441, 555 A.2d 1264, 1272–73 (1989) (citations omitted). The burden is on the Commonwealth to establish that the identification procedure was not suggestive. *Id.*

The trial court, which examined the various photo arrays which were presented to witnesses during out-of-court identification procedures, found as a fact that the various individuals portrayed in the eight photographs in each array had similar facial hair, were similar in age and had "strikingly similar outlines of the face[s]." (N.T. 5/26/92, p.m. at 51). The trial court further found that there was no undue suggestion in the method in which the arrays were shown to the witnesses. Because the trial court's determination that the photo arrays were not suggestive is supported by the record, we find no abuse of discretion. Appellant's claim that the out-of-court identifications were tainted must therefore fail. Appellant provides no basis or argument that would warrant a disturbance of the trial court's ruling. Because the out-of-court identifications were not tainted, we need not address appellant's argument that the in-court identifications lacked an independent basis. *Hughes, supra,* 521 Pa. at 441, n. 7, 555 A.2d at 1272–73, n. 7 (1989) (having concluded that police conduct did not taint witness' out-of-court identification, argument that witness lacked an independent basis for in-court identification need not be addressed).

## *SUPPRESSION OF PHYSICAL EVIDENCE*

Next, appellant asserts that unspecified evidence seized in a search of his home should have been suppressed because the search was conducted pursuant to a warrant which was not supported by probable cause. During the course of the search of appellant's home, police seized a briefcase containing plastic bags of cocaine, numerous live rounds of various ammunition, a sixteen gauge shotgun, a nine millimeter handgun, a .45 caliber 30–30 handgun and numerous identifications for appel-

398

lant.[15] Appellant omits from his brief the fact that none of this evidence was admitted at trial.[16] Thus, any error in denying the motion to suppress this evidence was harmless.

## MOTIONS FOR MISTRIAL

Appellant next contends that the trial court erred in refusing his numerous motions for mistrial. It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. *Commonwealth v. Gardner*, 490 Pa. 421, 426, 416 A.2d 1007, 1009 (1980). Moreover, a mistrial is only warranted where the incident upon which the motion is based is of such a nature as to deny the defendant a fair trial. *Commonwealth v. Bracey*, 541 Pa. 322, 340–41, 662 A.2d 1062, 1071 (1995).

These claims will be addressed *seriatim:*

(a) Appellant first claims that the trial court erred in refusing to grant his motion for a mistrial after a Commonwealth witness testified that the defendants had offered him a bribe not to testify at trial. This testimony was given in response to *defense counsel's* inquiry as to whether the witness, Paul McDonald, had been offered any arrangements in regards to a pending criminal case against him in exchange for his testimony. The witness non-responsively replied, "No, the only offer I had was those guys [defendants]. These people offered me $5,000.00 not to come to court." (N.T. 5/28/92 at 53).

At the outset, we note that testimony regarding attempts by a defendant in a criminal prosecution to interfere with witnesses is admissible to show the defendant's consciousness of guilt. *Commonwealth v. Williams*, 532 Pa. 265, 275, 615 A.2d

15. This issue was waived because appellant did not raise it in post-verdict motions. Pa.R.A.P. 302(a). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra,* 500 Pa. at 26, 454 A.2d at 942.

16. The only reference which may have related to anything found during the search was a question by the prosecutor during the penalty phase concerning one of appellant's aliases. However, several witnesses also told police that appellant was known by that nickname.

716, 721 (1992) (presenting a fabricated defense through suborned perjury admissible to show consciousness of guilt); *Commonwealth v. Lark*, 518 Pa. 290, 308–09, 543 A.2d 491, 500 (1988) (attempts to intimidate or influence witnesses admissible to show consciousness of guilt), *citing Commonwealth v. Goldblum*, 498 Pa. 455, 473, 447 A.2d 234, 243 (1982) and cases cited therein. Because the testimony complained of was the type generally admissible, the trial court did not err in refusing to grant a mistrial. *Commonwealth v. Crawley*, 514 Pa. 539, 555–556, 526 A.2d 334, 342–43 (1987) (no mistrial warranted where testimony was admissible).

Notwithstanding that the testimony was admissible, appellant further contends that the trial court erred in failing to give a "proper" curative instruction following the witness' statement concerning the bribe. While the record reveals that no instruction was given after this testimony, the record also reveals that the trial court offered to give a curative instruction, but that the trial court's offer was refused by counsel.[17] (N.T. 5/28/92, at 59–60). Appellant cannot now claim the trial court erred in refusing to take an action when the basis for the court's inaction was counsel's failure to pursue the offer of the curative instruction. Furthermore, this issue was not raised in post-verdict motions and is therefore waived, notwithstanding its lack of merit. Pa.R.A.P. 302(a).

17. The trial court asked at sidebar, "Does any defense counsel wish a curative, and if so, to what extent?" Mr. Greenberg, who was representing Lamont Bruce, stated that he did not want a curative and that he intended to cross-examine the witness on the issue of the unreported bribe. Mr. Padova, counsel for Robert Holmes, also specifically stated that he wanted the issue left alone at that point. Mr. Mandell, appellant's attorney, did not respond to the court's offer at all. The trial court stated to counsel at sidebar that it was willing to tell the jury that the statement concerning the bribe was "hearsay and therefore they should totally disregard it." (N.T. 5/28/92 at 59–60). After counsel declined the offer, *id.*, Mr. Greenberg then proceeded to cross-examine the witness concerning his failure to report the bribe.

Appellant does not argue that the curative instruction offered by the court was refused because it was improper. Nor does appellant identify what he believes would have been a proper curative instruction in his brief. Hence, we cannot say that the trial court abused its discretion in denying the motion for mistrial.

(b) Appellant next argues that the trial court should have granted a mistrial when a spectator in the courtroom disrupted the closing argument of co-defendant's counsel.[18] When Bruce's attorney stated in his closing argument that the prosecution's theory that appellant and Holmes had been summoned to the scene by Bruce was speculative, an unidentified man in the courtroom shouted out, "It is possible. It is possible. Boy had my nephew in here. Possible. It is possible. Don't you tell me. It is possible. God damn right." (N.T. 6/2/92 at 45).

Given the brevity of the outburst and the vague nature of its content, this Court concludes that appellant was not prejudiced to such an extent by the incident that an impartial verdict could not be reached. Thus, the outburst does not require the granting of a mistrial. *Simmons, supra,* 541 Pa. at 238–39, 662 A.2d at 634–35 (no mistrial warranted when victim fainted in courtroom); *Commonwealth v. Marshall,* 523 Pa. 556, 569, 568 A.2d, 590, 596 (1989) (emotional outburst by victim's mother did not require mistrial); *Gardner, supra* (mistrial not warranted where victim's family broke down in front of jury); *Commonwealth v. Hawkins,* 448 Pa. 206, 219, 292 A.2d 302, 309 (1972) (no mistrial warranted where victim's brother interrupted defense closing argument and shouted "He murdered him. You are a bum.").[19] Therefore, appellant is not entitled to relief on this issue.

18. Again, appellant did not raise this issue in post-verdict motions and it is therefore technically waived. Pa.R.A.P. 302(a). Nonetheless, we will address the issue under the relaxed waiver rule of *Zettlemoyer, supra,* 500 Pa. at 26, 454 A.2d at 942, so as to avoid future claims of ineffective assistance of counsel.

19. Appellant also asserts that he was prejudiced by the trial court's failure to give an immediate cautionary instruction. However, once again the reason the court failed to give a curative instruction was because counsel chose not to have one. The following discussion occurred at sidebar:

THE COURT: I am not going to grant a mistrial because of that outburst by some stranger not under oath, not subject to cross-examination. It is not evidence. If you want a curative along those lines, I will do it.

MR. GREENBERG: I don't want that, a curative. Let's go on.

(N.T. 6/2/92 at 46).

■ (c) Appellant next argues that a mistrial should have been granted when the prosecutor allegedly "asked a defense witness . . . if she was introduced to [appellant] at Holmesburg Prison." Appellant's Brief at 16. However, the record fails to demonstrate that the prosecutor asked such a question. Rather, in order to refute the witness' contention that she did not have a relationship with co-defendant Bruce, the prosecutor asked the witness, "At any time that you met with Mr. Bruce after this incident, did you—he introduce you to Mr. Johnson, William Johnson?" In response, the witness volunteered, "I went to Holmesburg when he was up in Holmesburg." (N.T. 6/1/92 at 85). The Commonwealth did not pursue the issue and no information was disclosed as to why appellant was in prison.

In response to the witness' non-responsive reference to her introduction to appellant while he was in prison, the court sustained a defense objection and instructed the jury to disregard the location of the conversation as that had nothing to do with the trial. (N.T. 6/1/92 at 86). The jury is presumed to follow the court's instructions. *Commonwealth v. Steele*, 522 Pa. 61, 78, 559 A.2d 904, 913 (1989). Moreover, the statement was not elicited by the Commonwealth, the Commonwealth did not pursue the issue further with the witness and the jury was not informed of the reason appellant was in prison. *Commonwealth v. Murphy*, 540 Pa. 318, 332–33, 657 A.2d 927, 934 (1995) (no mistrial warranted when witness stated defendant was on death row because prosecutor neither elicited nor exploited the testimony). Given the circumstances surrounding the witness' statement, any prejudice suffered by the unresponsive answer was cured by the immediate cautionary instruction given by the court. *Commonwealth v. Moore*, 534 Pa. 527, 545, 633 A.2d 1119, 1128 (1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (mistrial not warranted where defendant appeared in prison clothing at

Neither Mr. Mandell nor Mr. Padova responded verbally to the offer of a curative instruction. Trial counsel's failure to seek a timely curative instruction cannot now be complained of on appeal. *Commonwealth v. Cruz*, 489 Pa. 559, 565, 414 A.2d 1032, 1035 (1980) (failure to request a curative instruction results in waiver).

trial and judge informed jury that defendant was incarcerated); *Commonwealth v. Zook,* 532 Pa. 79, 96–97, 615 A.2d 1, 10 (1992), *cert. denied,* 507 U.S. 974, 113 S.Ct. 1420, 122 L.Ed.2d 789 (1993) (reference to defendant's incarceration did not warrant mistrial where statement was neither elicited nor exploited by Commonwealth and jury was not informed of reason for incarceration). Therefore, appellant was not entitled to a mistrial on this issue.

(d) Finally, appellant claims that the trial court should have granted a mistrial when the prosecutor referred to appellant and his co-defendants during closing arguments as "henchmen" whose "idea of urban renewal was taking somebody that they did not personally like from the neighborhood and covering up his killing". (N.T. 6/2/92 at 92, 112). Appellant contends that this testimony was prejudicial because it implied a conspiracy.

At the outset, we note that appellant was charged with conspiracy and where, as here, evidence was introduced to establish the conspiracy charge, the prosecution could argue all reasonable inferences therefrom. *Commonwealth v. D'Amato,* 514 Pa. 471, 489, 526 A.2d 300, 309 (1987) (prosecutor is entitled to argue based on all reasonable inferences which can be drawn from the evidence at trial). Furthermore, a review of the record reveals that there was indeed evidence regarding a conspiracy from which the prosecution could properly argue a conspiracy. Testimony was presented at trial that appellant and Holmes had been summoned to the scene of the murder by Bruce and that appellant had shot the victim after a signal from Bruce. Therefore, the challenged statements were fair comment with oratorical flair by the prosecutor based on the reasonable inferences drawn from the evidence. Appellant was not entitled to a mistrial because the prosecutor argued that the evidence supported one of the crimes with which appellant was charged or the prosecutor employed oratorical flair in his closing. *Id.*

Furthermore, it is well established that the prosecutor's statements are not evidence. *Commonwealth v. Carter,* 537

Pa. 233, 265, 643 A.2d 61, 77 (1994) (trial court instruction to jury not to consider prosecutor's statements as evidence cured any prejudice which may have been caused by comments). The trial court here instructed the jury on this well established rule. (N.T. 6/3/92 at 3). The trial court's instruction cured any improper prejudice from such remarks. Therefore, this claim fails.

## REFUSAL TO PARTICIPATE IN LINE-UP

Appellant next argues that the trial court erred in allowing Police Detective William Wynn to testify that appellant refused to participate in a line-up. Appellant argues that the Commonwealth presented this evidence in an effort to demonstrate to the jury that appellant was in custody and to imply his guilt through his refusal to participate in the lineup.[20] However, with respect to the first portion of this argument, the trial court specifically ruled that no testimony concerning the location of the scheduled line-up would be permitted and none was given. Therefore, the jury was not informed that appellant was in custody at the time of the line-up. Thus, in this regard, appellant's claim is meritless.

With respect to the testimony regarding appellant's refusal to participate in a line-up, this evidence was admissible in order to demonstrate appellant's consciousness of guilt. A suspect in a criminal investigation does not have the right to refuse to participate in an otherwise fair police line-up. *United States v. Wade*, 388 U.S. 218, 222, 87 S.Ct. 1926, 1929, 18 L.Ed.2d 1149 (1967); *Commonwealth v. Aljoe*, 420 Pa. 198, 202, 216 A.2d 50, 52–53 (1966). Thus, when a

**20.** Appellant bases his cursory argument on the fact that a defendant does not have the duty to select other individuals to appear in the line-up. However, the testimony presented was that he refused to participate in the line-up at all, not that he refused to select other individuals to participate in the line-up. Appellant does not develop an argument as it pertains to totally refusing to participate in a line-up. We also note that this issue was not raised in post-verdict motions and is therefore technically waived. However, as noted previously, we will in capital cases address waived claims under the relaxed waiver rule of *Zettlemoyer, supra*, 500 Pa. at 26, 454 A.2d at 942.

defendant refuses to participate in a court-ordered line-up, he is suppressing important evidence. *United States v. Parhms*, 424 F.2d 152, 154–55 (9th Cir.1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970). Thus, the jury may logically infer that defendant refused because of his fear of identification in the line-up due to his consciousness of guilt. *Id.* See also, *Commonwealth v. Horwat*, 511 Pa. 398, 401, 515 A.2d 514, 515 (1986) (jury can infer consciousness of guilt from alteration of appearance in order to avoid identification at line-up); *Commonwealth v. Colson*, 507 Pa. 440, 464–65, 490 A.2d 811, 823–24 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986) (same); *Commonwealth v. Berrios*, 495 Pa. 444, 452–53, 434 A.2d 1173, 1178 (1981) (same); *Commonwealth v. Holland*, 480 Pa. 202, 218, 389 A.2d 1026, 1033 (1978) (jury can infer consciousness of guilt from alteration of appearance in order to avoid in-court identification at trial). Therefore, testimony that appellant refused to participate in a court-ordered line-up was properly admitted by the trial court to demonstrate his consciousness of guilt.

## *PROSECUTORIAL MISCONDUCT IN PENALTY PHASE*

Appellant next raises several allegations of prosecutorial misconduct in the penalty phase for which he also claims a mistrial should have been granted. As stated above, a prosecutor's comments are not evidence and the court clearly instructed the jury on this rule of law. Moreover, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and a hostility toward the defendant such that they could not weigh the evidence objectively and render a true penalty determination. *Commonwealth v. Simmons*, 541 Pa. 211, 245–46, 662 A.2d 621, 638 (1995).

Appellant first argues that the court erred in refusing to grant a request for a mistrial after the prosecutor asked a defense character witness if he knew that appellant's nick-

name was "Will Kill." (N.T. 6/9/92 at 30).[21] The prosecutor asked this question in response to a defense character witness' lengthy testimony that appellant was helpful and well-liked around the neighborhood.[22] Appellant's objection to the question was overruled and the trial court allowed the witness to answer in the affirmative that he was aware that appellant used that nickname.

A witness who testifies to the good character of a defendant may be cross-examined regarding his knowledge of evidence of that defendant's bad character in order to test the accuracy of his testimony. *Commonwealth v. Peterkin,* 511 Pa. 299, 318, 513 A.2d 373, 382–83 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). The witness' knowledge that appellant was known as "Will Kill" was relevant under this standard to impeach the witness' testimony concerning appellant's reputation as kind and helpful. Because the prosecutor did not engage in misconduct in asking this question, appellant was not entitled to a mistrial.

Appellant also argues that four remarks made by the prosecutor during closing arguments in the penalty phase amounted to misconduct. The statements now challenged are:

(1) "It took a man to die before we even got this far. How many more people, Ladies and gentlemen?" (N.T. 6/9/92 at 80);

(2) "The idea that he has gotten some breaks, the system has failed [appellant] when a man has gotten only five years in jail for only three robberies." (N.T. 6/9/92 at 81);

21. Although trial counsel did not request a mistrial after the court overruled an objection to this question or raise the issue in post-verdict motions, thereby waiving this issue, we will nonetheless examine it under the relaxed waiver rule of *Zettlemoyer, supra,* 500 Pa. at 26, 454 A.2d at 942.

22. Appellant argues in his brief that there was no factual support for the prosecutor's question because no witnesses referred to appellant as "Will Kill." However, an identification found in a search of appellant's home identified appellant as "Will Kill" and several witnesses told police that appellant was known as "Will Kill." (*See, e.g.,* N.T. 5/21/92 a.m. at 21, 48). Therefore, appellant's claim that there was no foundation for the question is without merit.

(3) "Isn't it funny how all of them [character witnesses for appellant] come here and paint him as a saint in the neighborhood?" (N.T. 6/9/92 at 82); and

(4) "Ladies and gentlemen, again were these witnesses put up there to make you think that well, maybe he didn't do these robberies?" (N.T. 6/9/92 at 83).

At the outset, appellant fails to identify or explain how he was prejudiced by the remarks. Absent prejudice which misleads the jury, prosecutorial misconduct does not warrant a mistrial. *Commonwealth v. Holloway,* 524 Pa. 342, 353, 572 A.2d 687, 693 (1990).

In reviewing these comments, we find that they were not improper. Comments by the prosecutor during closing arguments must be considered in the context of the entire summation and will not warrant a mistrial unless they arouse the jury's emotions to such an extent that it is impossible for the jury to impose a sentence based on relevant evidence. *Commonwealth v. Thompson,* 538 Pa. 297, 312, 648 A.2d 315, 322 (1994) (citations omitted). With these standards in mind, we find that none of the four complained-of excerpts warranted a mistrial.

The first two statements complained of were permissible oratorical argument in support of the imposition of the death penalty. *Commonwealth v. Travaglia,* 502 Pa. 474, 502, 467 A.2d 288, 302 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984) ("When will it stop? When is it going to stop? Who is going to make it stop? That's your duty?" permissible argument in favor of death penalty); *Commonwealth v. Baker,* 531 Pa. 541, 558, 614 A.2d 663, 671–72 (1992) (there is no presumption of innocence at the penalty phase; therefore, the prosecutor is entitled to "present argument for or against the sentence of death"). Because argument in support of the death penalty is a proper consideration in the penalty phase of a capital case, no mistrial was warranted for the first two prosecutorial remarks.

The remaining two statements complained of by appellant were permissible comment to counter testimony pre-

sented at the penalty phase that appellant was a kind person who frequently assisted elderly and disabled neighbors. Where the prosecutor merely argues matters in evidence, no new trial is warranted. *Commonwealth v. Lawson,* 519 Pa. 175, 190, 546 A.2d 589, 596 (1988). The prosecutor may properly comment on the evidence and is permitted to do so with reasonable oratorical flair. *Commonwealth v. Marshall,* 534 Pa. 488, 502, 633 A.2d 1100, 1107 (1993) (during the penalty hearing, the prosecutor is accorded reasonable latitude and may employ oratorical flair in arguing for a sentence of death). The prosecutor's comments were logically related to testimony presented during the penalty phase concerning appellant's character, and were therefore relevant evidence during the penalty phase of the trial. Accordingly, a new sentencing hearing is not warranted.

## LENGTH OF DELIBERATIONS IN PENALTY PHASE

■■■ Next, appellant contends that the trial court erred in refusing to end jury deliberations during the penalty phase when the jury indicated that they were deadlocked after less than one full day of deliberation. The length of jury deliberations is within the sound discretion of the trial judge whose decision will not be disturbed absent an abuse of discretion or evidence that the verdict was the product of coercion or an overworked or fatigued jury. *Commonwealth v. Wharton,* 542 Pa. 83, 90–91, 665 A.2d 458, 461 (1995); *Zook, supra,* 532 Pa. at 104–06, 615 A.2d at 14–15. In determining whether the trial court abused its discretion, consideration should be given to the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings and indications from the jury on the possibility of reaching a verdict. *Wharton supra; Zook, supra; Commonwealth v. Chester,* 526 Pa. 578, 604–05, 587 A.2d 1367, 1380–81, *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991).

■ In the present case, testimony was taken over the course of six days during the guilt phase, the jury deliberated for two days before reaching a guilty verdict, and there was

another day of testimony in the penalty phase. Deliberations began in the penalty phase at some point on June 9, 1992,[23] and the jury informed the court that it was *presently* deadlocked before lunch on June 10, 1992. The court reinstructed the jury on aggravating and mitigating circumstances, informed the jury that if it reported that it was hopelessly deadlocked he would sentence appellant to life and then sent the jury back for further deliberations. The jury, however, returned with a sentence of death within a few hours. The jury was polled and each juror stated that he or she agreed with the verdict.

Based on the length of the trial, the gravity of the matter under consideration and the fact that the jury did not indicate that it was *hopelessly* deadlocked, this Court finds that the trial court did not abuse it's discretion in sending the jury back for further deliberations. *Zook, supra* (court did not abuse discretion in requiring further deliberations after five-day trial and four and a half hours of deliberations); *Chester, supra* (no abuse of discretion to continue deliberations where jury indicated deadlock after three hours and again after eleven hours and verdict was reached after thirteen hours); *Commonwealth v. Penn,* 497 Pa. 232, 246, 439 A.2d 1154, 1161, *cert. denied,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (no abuse of discretion to continue deliberations where jury indicated that it was deadlocked after two days of deliberations, but reached a verdict on the fourth day). Furthermore, appellant has not demonstrated that the verdict was the product of coercion or an overworked and fatigued jury. Therefore, appellant is not entitled to relief on this claim.

### LEGALITY OF SENTENCE

 Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

23. There is no indication in the transcripts or elsewhere in the record of exactly what time of the day the jury was sent out to deliberate.

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3). After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. In addition, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S. § 9711(d). Here, the aggravating circumstances found by the jury were that in the commission of the offense, appellant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7); and appellant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9). Appellant and his co-defendants created a grave risk of death to Ardell McDaniel when they fired shots at him as he attempted to pursue them as they fled the scene. The Commonwealth also presented evidence that petitioner pleaded guilty to robbery and criminal conspiracy on January 17, 1985; pleaded guilty to robbery and possession of an instrument of crime on May 27, 1987; and was convicted of three counts of armed robbery on October 24, 1985. (N.T. 6/9/92 at 11–16). Thus, the evidence supported each of these aggravating circumstances. Moreover, in accordance with *Zettlemoyer, supra,* 500 Pa. at 63, 454 A.2d at 961, we have reviewed the sentencing data compiled by the Administrative Office of the Pennsylvania Courts (AOPC) pertaining to similar cases and conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the sentences imposed in similar cases. See *Commonwealth v. Frey,* 504 Pa. 428, 443, 475 A.2d 700, 707–08, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

Accordingly, we affirm the verdict and sentence of death imposed upon appellant by the Court of Common Pleas of

410

Philadelphia County.[24]

CAPPY, J., concurs in the result.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

24. The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the complete record in this case to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).