J-S40028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT STAPLES | : | |
| | : | |
| Appellant | : | No. 500 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 2, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0000557-2019

BEFORE:  PANELLA, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 3, 2023**

Appellant Robert Staples appeals from the March 2, 2020 judgment of

sentence entered in the Court of Common Pleas of Philadelphia County ("trial

court"), following his non-jury convictions for aggravated assault,

strangulation—applying pressure to throat or neck, terroristic threats with

intent to terrorize another, criminal mischief, theft by unlawful taking—

movable property, receiving stolen property, simple assault, recklessly

endangering another person ("REAP"), and false imprisonment.[1] Upon review,

we affirm.

The facts and procedural history of this case are undisputed.  As

summarized by the trial court:

---

[1] 18 Pa.C.S.A. §§ 2702(a), 2718(a)(1), 2706(a)(1), 3304(a)(5), 3921(a), 3925(a), 2701(a), 2705, and 2903(a), respectively.

At or around 5:00 a.m. on December 2, 2018, [V.L. ("VL")], the girlfriend of Appellant, was asleep in the bedroom she shared with Appellant located on Elbridge Street in the city and county of Philadelphia.  VL testified that she was awoken by a slap to the thigh, which was delivered by Appellant.  At this time, Appellant confronted VL about text messages that he found on an old cellphone, that dated back to before VL and Appellant were in a relationship.  VL proceeded to get out of bed and put on clothes, while requesting that Appellant calm down.  VL then walked from the bedroom to the kitchen.  Appellant followed VL into the kitchen and physically got in VL's face, eventually backing VL against a wall with their chests touching.

While VL and Appellant were standing chest to chest, Appellant stated, "Oh, you are getting smart.  You are pissing me off.  I am really about to put my hands on you."  VL attempted to push Appellant away by placing both hands on Appellant's chest and told Appellant to get away from her.  Appellant backed up slightly as a result of VL's push.  In response, Appellant punched VL one time in the cheek area on each side of her face using both hands with closed fists.  The altercation ended when VL silently grabbed her immediate belongings and ran out of the apartment.  After leaving the apartment, VL drove to a friend's house.

At or around 1:30 p.m. on December 2, 2018, VL returned to the apartment with the intent to pick up her work uniform.  Prior to VL returning to the apartment, Appellant told VL that he was no longer in the apartment via text message.  When VL arrived at the apartment, she did not see Appellant's car parked outside the apartment.  To confirm, VL drove around the block looking for Appellant's car but did not see it parked in the vicinity of the apartment.  VL parked her car and entered the apartment, where she found Appellant and his son still inside.  VL testified that Appellant was asleep in the bedroom when she initially entered the apartment.  At this time, VL began to gather necessary belongings, but was unable to locate her purse or wallet.

While VL was searching the apartment for her purse and wallet, Appellant approached VL saying, "Oh, you think you are going to be coming in here whatever time you want after you been out there fucking and sucking, being a whore."  A verbal altercation ensued, during which VL asked Appellant for her purse and wallet. Appellant replied that he would give it to her when he felt like it. Appellant then punched VL in the area of her nose and teeth.  VL

attempted to defend herself but was unable due to the size difference between her and Appellant. VL testified that Appellant continued to punch her and pull her hair, causing her to hit her head on the kitchen counter and fall to the ground. Once VL was on the ground, Appellant placed his knees on VL's forearms in order to pin her to the ground while laying on her back. VL attempted to call for help, to which Appellant responded, "Bitch, you don't want to do that in here. I will kill you." Appellant proceeded to choke VL using both hands, causing her to be unable to breathe. VL admitted that she thought she was going to die while being choked by Appellant. VL briefly lost consciousness. When VL awoke, she felt "a little woozy and dizzy." Further, VL observed that although Appellant was still pinning her down, Appellant's hands were no longer around her neck.

After VL regained consciousness, Appellant grabbed VL by the hair and began indiscriminately punching her all over her upper body. During the beating, VL was able to feel her hair ***drenched in blood***. Appellant eventually released VL, but when she attempted to leave the apartment, Appellant blocked the exit and expressed concern about the injuries VL had sustained. VL was unable to leave the apartment to go to the hospital due to Appellant blocking the exit. Furthermore, VL was unable to access her cellphone to call 911 because she had hidden her cell phone on top of the refrigerator prior to the altercation, in fear that Appellant would break said cell phone. The altercation ended when VL's sister, [S.B.], arrived at the apartment.

VL left the apartment with her sister but was still unaware of the location of her pocketbook and wallet. As a result, VL and her sister began to drive around the vicinity of the apartment looking for Appellant's car. After about five (5) minutes of searching, Appellant's car was located and VL was able to retrieve her pocketbook and wallet from Appellant's unlocked car. VL and her sister then briefly returned to the apartment to grab VL's work uniform and move VL's car, before proceeding to their mother's house. VL's mother immediately drove VL to Temple University Hospital for treatment of her injuries.

Officer Douglas interviewed VL at the hospital, where she confirmed that Appellant punched her in the face multiple times, causing her to hit her head. Hospital records show that VL was treated at Temple University Hospital for a neck abrasion, cheek contusion, chest wall contusion, superficial laceration to the lateral

neck, and occipital linear laceration to the scalp that required three staples to close. VL was discharged from the hospital a couple of hours after arrival. After being released from the hospital, VL stayed the night at her cousin's house because she was too afraid to return home.

On December 4, 2018, VL went to the police station to participate in a full interview. On this same date, VL obtained an emergency Protection from Abuse Order against Appellant. After obtaining the emergency Protection from Abuse Order, VL returned to the apartment with her sister and cousin to find her belongings destroyed. More specifically, VL found her TV busted, her speaker thrown into the toilet, and her clothes and shoes bleached and/or cut up. Appellant was the only individual with a key to the apartment. VL's version of events was corroborated by the testimony of her sister, [S.B.]. After these incidents, Appellant repeatedly threatened VL via emails and text messages, which were provided to law enforcement.

At trial, Appellant testified on his own behalf. Appellant admitted to having an argument with VL about infidelity but claimed that this argument first began at 11:00 p.m. on December 1, 2018. Appellant testified that after a brief verbal argument, VL left the apartment. About a half an hour later, Appellant gathered his belongings and placed them by the front door of the apartment. Per Appellant, Appellant sent a photo of said gathered belongings to VL and went to sleep. Appellant awoke at 2:00 a.m. to VL shaking him, at which point a second verbal altercation about infidelity ensued. During the second verbal altercation, Appellant testified that VL attempted to hit him, but he was able to grab her hand and throw it away from his face. Appellant asserted that when VL eventually hit him in the face he "mugged her" and said, "this is what you get." Appellant denied that he pinned VL down, pulled VL's hair, punched VL multiple times with a closed fist, and choked VL. Moreover, Appellant denied that he damaged VL's property inside the apartment.

Trial Court Opinion, 4/18/22, at 2-6 (record citations omitted). Following a bench trial, on November 19, 2019, the trial court found Appellant guilty of the above-mentioned crimes. The court, however, acquitted Appellant of endangering the welfare of children under 18 Pa.C.S.A. § 4304(a)(1).

On March 2, 2020, the trial court sentenced Appellant to an aggregate term of six to twelve years' incarceration, followed by three years' probation. Appellant neither filed any post-sentence motions nor appealed his judgment of sentence.

On April 15, 2020, Appellant filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46, seeking the *nunc pro tunc* reinstatement of his direct appeal rights. Following appointment of counsel, the PCRA court granted relief on January 18, 2022. Thereafter, Appellant timely filed a notice of appeal. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, challenging only the sufficiency of the evidence underlying his conviction for aggravated assault. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents a single issue for our review.

[I.] Whether the trial court erred, when it found Appellant [] guilty of aggravated assault (F1), as there was insufficient evidence, adduced at trial by the Commonwealth, to prove this criminal offense beyond a reasonable doubt[.]

Appellant's Brief at 4 (unnecessary capitalizations omitted).

A claim challenging the sufficiency of the evidence is a question of law."

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh

- 5 -

the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

The Crimes Code provides that "[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). If the victim in fact suffers serious bodily injury, the Commonwealth need not prove specific intent. *See Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (*en banc*), *appeal denied*, 940 A.2d 364 (Pa. 2007). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such

a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." ***Commonwealth v. Hall***, 830 A.2d 537, 542 (Pa. 2003).

Based on our review of the record, as detailed above, we agree with the trial court's conclusion that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant was guilty of aggravated assault. As the trial court reasoned:

> Appellant **punched** the victim, VL, in the face and upper body numerous times, **causing** her to hit her head on the kitchen counter before falling to the ground. The impact to the head and upper body resulted in a neck abrasion, cheek contusion, chest wall contusion, superficial laceration to the lateral neck, and occipital linear laceration to the scalp that required three staples to close. This [c]ourt carefully weighed the testimony of the witnesses and observed photos of the victim's injuries, which were also described within the medical records provided to the [c]ourt. This evidence was sufficient to prove Appellant intentionally caused the "protracted loss or impairment of the function" of the victim's head and brain by repeatedly punching her in the head and face.

Trial Court Opinion, 4/18/22, at 8 (record citations omitted) (emphasis added). The record is clear that Appellant repeatedly banged VL's head on the floor, choked her to the point of unconsciousness, and then punched her after she regained consciousness.[2] Accordingly, we agree with the trial court's

---

[2] Appellant misrepresents the record when he claims that VL suffered head injury when she hit her head on the kitchen countertop. Appellant's Brief at 14. At trial, VL never claimed that the countertop was the cause of her

*(Footnote Continued Next Page)*

conclusion that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant committed aggravated assault. *See Commonwealth v. Burton*, 2 A.3d 598, 603 (Pa. Super. 2010) (affirming judgment of sentence for aggravated assault where defendant punched victim one time in head while victim was not looking, and victim was knocked unconscious), *appeal denied*, 32 A.3d 1275 (Pa. 2011). Appellant obtains no relief.

Judgment of sentence affirmed.

─────────────────────────────────

injuries. On the contrary, VL specifically testified that Appellant caused her injuries and her head "bust open" when Appellant "continuously banged my head on the ground." N.T., Trial, 11/27/19, at 65. Furthermore, insofar as Appellant invites us to accept his proffered version of the events, we decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence. *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/3/2023</u>