J-S45027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
MICHAEL MCKINNON :
:
Appellant : No. 1722 EDA 2022

Appeal from the Judgment of Sentence Entered February 15, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0001240-2021

BEFORE:  OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 28, 2023**

Appellant Michael McKinnon appeals from the February 15, 2022 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his bench conviction for strangulation, simple assault, and recklessly endangering another person ("REAP").[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As detailed by the trial court:

On December 11, 2020, [Appellant] and his intimate partner of three years, [G.B.], began to argue after they were involved in a car accident.  [G.B.] was the driver and [Appellant] was a passenger in the car on the way to pick up their two friends when they were involved in the accident.  After the accident, [G.B.], [Appellant], and the two friends drove to [G.B.'s] home at [] South Bembrey Street in Philadelphia.  [G.B.] attempted to arrange picking up a rental car.  While [G.B.] made these arrangements,

_____

[1] 18 Pa.C.S.A. §§ 2718(a)(1), 2701(a), and 2705, respectively.

[Appellant] went around the block to a corner store that sells liquor shots. He came back to the house from the corner store with a "grisly" look on his face, indicating to [G.B.] that he had recently drank liquor.

[Appellant] called [G.B.] a bitch and said he was going to tell the insurance company the accident was her fault. [G.B.] called [Appellant] a drunk and then drove, with [Appellant] in the car, her two friends back to their house. During the car ride back to her house on Bembrey Street, [G.B.] called her sister and spoke with her through a Bluetooth device, telling her sister that [Appellant] had been drinking and that she was going to go to her bedroom when she arrived at home because she "knew where this [was] heading." Upon their return to [G.B.'s] house, [Appellant] went inside ahead of [G.B.]. Shortly after, [G.B.] followed [Appellant] inside. She locked the door, turned around, and [Appellant] punched her once in the chest. [G.B.] was still on the phone with her sister when this happened.

Next, [Appellant] grabbed [G.B.'s] shirt and threw her to the floor. [G.B.'s] wallet fell from her back pocket when [Appellant] threw her down. [G.B.] testified that [Appellant] took her phone and threw it across her living room, with the phone landing in between her sofa and her table. [G.B.] and [Appellant] grabbed for the wallet at the same time. [G.B.] testified that while attempting to get the wallet from [G.B.'s] hands, [Appellant] dragged [G.B.] by her arms from the front door to the kitchen area.

[G.B.] testified that [Appellant] sat on her back and pressed his forearm around her throat and neck. [G.B.] started to see spots and was afraid [Appellant] was going to kill her. [G.B.], despite being choked, was able to tell [Appellant] three times that she could not breathe. During the struggle, [Appellant] threatened to bite [G.B.] causing her to drop the wallet. Eventually, [Appellant] stopped choking [G.B.]. Knowing that [G.B.] has asthma, [Appellant] retrieved her inhaler, and tossed it on the ground next to her. [Appellant] obtained the wallet and took $200 out that he had given her earlier that day. [Appellant] left the house with [G.B.] still on the ground.

[G.B.] testified that her sister called the police who arrived after [Appellant] left. [G.B.] testified that paramedics arrived after the police and gave her a "breathing treatment." After, she went to the police district and gave a statement to detectives about the incident. She did not go to the hospital or photograph her injuries,

but she testified that she had some bruising on her chest area. [G.B.] explained that she did not want to be photographed or seek medical treatment because it was upsetting and embarrassing.

The next day, [Appellant] came back to [G.B.'s] house to bring back the $200 and a pair of shoes that she had gifted him. Two days after that, [Appellant] called [G.B.] complaining that he was struggling because he did not have access to his medication and that he was hungry. [G.B.] testified that, despite what [Appellant] had done to her, she did not want to see him suffer so she dropped off a bowl of spaghetti for him at his house.

[G.B.'s] sister, [J.W.], testified that she was on the phone with [G.B.] during this altercation. She testified that the phone call went from a calm conversation to stressful after [Appellant] began to curse at [G.B.] and call her a bitch. Eventually, the call ended and [J.W.] dialed 911 because of what she was hearing over the phone.

Trial Court Opinion, 8/22/22, at 1-3 (record citations omitted). Appellant was charged with and convicted of the above-referenced crimes.[2] On February 15, 2022, the trial court sentenced Appellant to three and one-half to seven years' imprisonment for strangulation, followed by consecutive two-year probationary terms for simple assault and REAP. On February 24, 2022, Appellant post-sentence motions, which were denied by operation of law June 27, 2022. *See* Pa.R.Crim.P. 720(B)(3)(c). Appellant timely appealed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

---

[2] The trial court found Appellant not guilty of theft by unlawful taking – movable property (18 Pa.C.S.A. § 3921(a)) and receiving stolen property (18 Pa.C.S.A. § 3925(a)).

On appeal, Appellant argues only that his conviction for strangulation was not supported by sufficient evidence. Appellant's Brief at 3. In particular, he argues that "there was insufficient evidence that he impeded [G.B.'s] breathing either knowingly or intentionally, the requisite *mens rea* under 18 Pa.C.S.A. § 2718." *Id.*

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Section 2718(a)(1) of the Pennsylvania Crimes Code states, "[a] person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by []

- 4 -

applying pressure to the throat or neck."  18 Pa.C.S.A. § 2718(a)(1).  The

"[i]nfliction of a physical injury to a victim [is] not [] an element of the

offense."  *Id.* at § 2718(b) (stating, "[t]he lack of physical injury to a victim

shall not be a defense in a prosecution under this section").

The Crimes Code defines the terms "knowingly," and "intentionally" as

follows:

### § 302. General requirements of culpability

  . . .

**(b) Kinds of culpability defined.**--

(1) A person acts intentionally with respect to a material element
of an offense when:

> (i) if the element involves the nature of his conduct or
> a result thereof, it is his conscious object to engage in
> conduct of that nature or to cause such a result; and

> (ii) if the element involves the attendant
> circumstances, he is aware of the existence of such
> circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of
an offense when:

> (i) if the element involves the nature of his conduct or
> the attendant circumstances, he is aware that his
> conduct is of that nature or that such circumstances
> exist; and

> (ii) if the element involves a result of his conduct, he
> is aware that it is practically certain that his conduct
> will cause such a result.

18 Pa.C.S.A. § 302(b)(1-2).  "[I]ntent can be proven by direct or

circumstantial evidence; it may be inferred from acts or conduct or from the

attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641

(Pa. Super. 2017) (citation and original quotation marks omitted), *appeal*

*denied*, 183 A.3d 970 (Pa. 2018).

Based on our review of the record, as detailed above, and given the

totality of the circumstances, we agree with the trial court's conclusion that,

viewed in a light most favorable to the Commonwealth, the evidence

establishes that the Commonwealth proved beyond a reasonable doubt that

Appellant was guilty of strangulation.  As the trial court reasoned:

> [T]here was sufficient evidence to convict [Appellant] of
> strangulation beyond a reasonable doubt because the trial court
> determined that [G.B.'s] testimony was credible.  This credible
> testimony described an intentional choke.[3]  Appellant was sitting
> on [G.B.'s] back, pressuring his forearm against her throat and
> neck area.  The Commonwealth and [G.B.] both explicitly used
> the word "choke" or "choking" numerous times during [G.B.'s]
> direct examination.  [G.B.] began to see spots during the choke
> and felt as if she was going to die. [G.B.] told Appellant that she
> could not breathe three times.  [She] recalled that she was unable
> to protest loudly because she "didn't have much breath."  [G.B.],
> during her testimony, questioned why her partner would choke
> her in this manner when Appellant knew [G.B.] had asthma.
> Appellant impeded [G.B.'s] breathing to the point that she needed
> to use her inhaler and receive breathing treatment from
> paramedics.  Appellant's choke was not merely incidental to the

---

[3] To the extent Appellant invites us to accept his preferred version of the events (that because he eventually ceased choking her after she told him thrice she could not breathe, he merely acted recklessly), we decline the invitation.  It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence.  *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *see also Antidormi*, *supra*.

struggle for the wallet. Appellant's conduct was not negligent or reckless, but rather an intentional impediment of [G.B.'s] breathing. There is sufficient and credible evidence demonstrating that Appellant's conduct was intentional, fulfilling the requisite *mens rea* in the strangulation statute.

Trial Court Opinion, 8/22/22, at 5-6 (record citations omitted). The record is clear that Appellant sat on G.B.'s back and pressed his forearm around her throat and neck. G.B., whom Appellant knows to be asthmatic, started to see spots and was afraid that Appellant was going to kill her. Despite being choked, and with what breath she could muster, G.B. had to tell Appellant three times that she could not breathe. Accordingly, we agree with the trial court's conclusion that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant committed strangulation. Appellant obtains no relief.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023