J-S59015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PERCY ST. GEORGE | : | |
| | : | |
| Appellant | : | No. 2348 EDA 2013 |

Appeal from the Judgment of Sentence December 3, 1997
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0405232-1997

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED NOVEMBER 30, 2018**

Appellant, Percy St. George, appeals from the judgment of sentence *nunc pro tunc* entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for four counts of robbery, six counts of kidnapping, and one count each of recklessly endangering another person ("REAP"), receiving stolen property ("RSP"), prohibited offensive weapons, firearms not to be carried without a license, causing or risking a catastrophe, and conspiracy.[1]  We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows.  On February 6-7, 1997, Appellant and his co-conspirators kidnapped several employees of the Financial Exchange Company in Philadelphia and held them

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1), 2901(a), 2705, 3925(a), 908(a), 6106(a), 3302, 903(a), respectively.

hostage in order to carry out what proved to be an unsuccessful scheme to seize and rob an armored truck carrying cash and food stamps. The scheme included forcing the employees into a van at gunpoint and taking them to another location to obtain information about the armored truck delivery and then taking them to one victim's home, where her two young children were present. The plan was to accompany one victim to the Exchange the next day to rob it.

A jury convicted Appellant of the offenses on October 22, 1997. On December 3, 1997, the court sentenced Appellant to an aggregate term of 15 to 30 years' imprisonment. Appellant did not file post-sentence motions or a direct appeal. Between 1999 and 2016, however, Appellant made multiple attempts to have his direct appeal rights reinstated *nunc pro tunc*. The PCRA court twice reinstated his direct appeal rights *nunc pro tunc*, in 2004 and in 2006, but each of those appeals was dismissed or quashed for failure to file a brief or for having been raised in an untimely PCRA petition.

On November 25, 2009, Appellant filed an amended counseled petition for writ of *habeas corpus* in federal court (he had originally filed one *pro se* on March 27, 2000, which was suspended during the pendency of Appellant's PCRA proceedings). The federal court granted Appellant conditional *habeas* relief on August 2, 2012, vacating the judgment of sentence until his appellate rights were reinstated *nunc pro tunc* by the state court. Though the August 2, 2012 order was noted on the trial court's docket, no formal order was

- 2 -

entered reinstating Appellant's direct appeal rights *nunc pro tunc*.

On July 15, 2013, Appellant filed a *nunc pro tunc* appeal. The court appointed counsel on May 12, 2014. On February 19, 2016, this Court issued a rule to show cause why the appeal should not be quashed as taken from an order not entered on the appropriate docket. Appellant filed a response on February 29, 2016, stating the federal court's August 2, 2012 order should be considered a *nunc pro tunc* reinstatement of Appellant's direct appeal rights. On March 8, 2016, the Commonwealth filed an answer, agreeing that the federal court's order and the trial court's docketing of the federal court's order served to reinstate Appellant's direct appeal rights *nunc pro tunc*. Upon review of the various responses, this Court discharged the rule to show cause.

On November 2, 2016, however, this Court dismissed the appeal for failure to file a brief. Appellant filed an application to reinstate the appeal on November 18, 2016, and on November 29, 2016, this Court reinstated the appeal and remanded for the trial court to order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court ordered the Rule 1925(b) statement on April 6, 2017. In lieu of a concise statement, counsel filed a Rule 1925(c)(4) statement on April 27, 2017, of his intent to file an **Anders** brief. On April 6, 2018, this Court dismissed the appeal again for failure to file a brief. Appellant filed an application to reinstate the appeal on April 17, 2018, which this Court granted on April 23, 2018. On the same day, counsel filed an application to withdraw

and an **Anders** brief in this Court.

As a preliminary matter, counsel seeks to withdraw his representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat,

what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.

\* \* \*

Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, Appellant's counsel has filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems worthy of this Court's attention. In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might arguably support Appellant's issues. Counsel further states the reasons for his conclusion that the appeal is wholly frivolous.

Therefore, counsel has substantially complied with the technical requirements of *Anders* and *Santiago*.

Appellant has not responded to the *Anders* brief *pro se* or with newly retained private counsel. Counsel raises the following issue on Appellant's behalf:

> IS [APPELLANT'S] APPEAL FRIVOLOUS SUCH THAT COUNSEL SHOULD BE PERMITTED TO WITHDRAW?

(*Anders* Brief at 2).

Appellant argues the trial court should have granted his motion to suppress the out-of-court photo array identifications, where the procedures used were unduly suggestive because Appellant's photograph occupied the first position in the arrays. Appellant also avers the evidence presented at trial was insufficient to support the various convictions. Finally, Appellant raises an unspecified allegation of trial counsel's ineffectiveness.[2] Appellant

_____

[2] "[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002). Our Supreme Court has recognized two very limited exceptions to the general rule in *Grant* regarding when trial courts may review ineffective assistance of counsel claims: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are apparent from the record and immediate consideration best serves the interests of justice and/or (2) where there is good cause shown and review of the claim is preceded by a waiver of the right to seek collateral review. *Commonwealth v. Holmes*, 621 Pa. 595, 598-99, 79 A.3d 562, 563-64 (2013). Neither of these exceptions applies in the present case. Therefore, as Appellant concedes, this appeal is not the proper time to raise or address any ineffectiveness of counsel claim. Instead, Appellant will have to wait to raise his claim(s) in a timely filed PCRA petition. Thus, we give this generic ineffectiveness of trial counsel claim no further attention.

concludes he is entitled to some form of relief. We disagree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

"A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." *Commonwealth v. Fisher*, 564 Pa. 505, 522, 769 A.2d 1116, 1126 (2001), *cert. denied*, 535 U.S. 906, 122 S.Ct. 1207, 152 L.Ed.2d 145 (2002) (citing *Commonwealth v. Johnson*, 542 Pa. 384, 396-97, 668 A.2d 97, 103 (1995), *cert. denied*, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996)). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out

more than those of the others, and the people depicted all exhibit similar facial characteristics." *Fisher, supra* at 522, 769 A.2d at 1126. The existence of a single possibly suggestive element in an identification procedure does not automatically require suppression of the identification evidence. *Commonwealth v. Monroe*, 542 A.2d 113 (Pa.Super. 1988), *appeal denied*, 522 Pa. 574, 559 A.2d 36 (1989).

"Whether an out-of-court identification is to be suppressed as unreliable, and hence violative of due process, is determined from the totality of the circumstances." *Commonwealth v. Sutton*, 496 Pa. 91, 94, 436 A.2d 167, 169 (1981). Reliability of an out-of-court identification is determined under a totality of the circumstances by considering, *inter alia*, the following specific factors: "the witness' ability 'to observe the criminal act; the accuracy of the photo array selection and other descriptions; the lapse of time between the act and any line-up; and any failure to identify the defendant on prior occasions.'" *Commonwealth v. Santiago*, 579 Pa. 46, 74, 855 A.2d 682, 698 (2004) (quoting *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663 (1992)).

With respect to a sufficiency claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Pennsylvania Crimes Code defines the offense of robbery in relevant part as follows:

**§ 3701.  Robbery**

**(a)   Offense defined.—**

(1)  A person is guilty of robbery if, in the course of committing a theft, he:

(i)   inflicts serious bodily injury upon another;

(ii)  threatens another with or intentionally puts him in fear of immediate serious bodily injury;

(iii) commits or threatens immediately to commit any felony of the first or second degree;

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

(v)  physically takes or removes property from the person of another by force however slight; or

\*    \*    \*

18 Pa.C.S.A. § 3701(a)(1).  The Crimes Code defines kidnapping as follows:

**§ 2901.  Kidnapping**

**(a)  Offense defined.—**… [A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

(1)  To hold for ransom or reward, or as a shield or hostage.

(2)  To facilitate commission of any felony or flight thereafter.

(3)  To inflict bodily injury on or to terrorize the victim or another.

(4)  To interfere with the performance by public officials of any governmental or political function.

18 Pa.C.S.A. § 2901(a).  Section 2705 of the Crimes Code provides:

**§ 2705.  Recklessly endangering another person**

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.  The Pennsylvania Crimes Code defines receiving stolen

property as follows:

**§ 3925.  Receiving stolen property**

**(a)  Offense defined.—**A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to

restore it to the owner.

18 Pa.C.S.A. § 3925(a). The Crimes Code defines prohibited offensive weapons as follows:

**§ 908. Prohibited offensive weapons**

**(a) Offense defined.**—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes, repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

18 Pa.C.S.A. § 908(a). Section 6106 of the Crimes Code in relevant part provides:

**§ 6106. Firearms not to be carried without a license**

**(a) Offense defined.—**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 PA.C.S.A. § 6106(a). The Crimes Code also defines the offense of risking a catastrophe as follows:

**§ 3302. Causing or risking catastrophe**

**(a) Causing catastrophe.—**A person who causes a

catastrophe by explosion, fire, flood, avalanche, collapse of building, release of poison gas, radioactive material or other harmful or destructive force or substance, or by any other means of causing potentially widespread injury or damage…commits a felony of the first degree if he does so intentionally or knowingly, or a felony of the second degree if he does so recklessly.

**(b) Risking catastrophe.—**A person is guilty of a felony of the third degree if he recklessly creates a risk of catastrophe in the employment of fire, explosives or other dangerous means listed in subsection (a) of this section.

18 Pa.C.S.A. § 3302. Section 903(a) of the Crimes Code provides:

**§ 903. Criminal Conspiracy**

**(a) Definition of conspiracy**.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime;

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

Instantly, regarding Appellant's suppression motion and sufficiency of the evidence claims, the original trial court reasoned:

[Appellant] first argues that the [c]ourt erred in not suppressing the photographic array and identifications that led to his arrest. This contention is meritless, as there was clearly probable cause for [Appellant's] arrest, and the photographic array was not suggestive.

[Appellant] challenges the photographic array as

- 12 -

suggestive, presumably because his photograph was in the first position. During the hearing on the Motion to Suppress, testimony from Detective Grimm of the Philadelphia Police Department established the process of generating a photo lineup. The suspect is entered into the computer, and the parameters of his build, height, and weight are determined by the computer. The computer then brings up photographs of other people with similar parameters and randomly generates the order of the lineup.

The position of a suspect's photo in a randomly generated lineup cannot be challenged as prejudicial. If this argument was accepted, then any defendant could challenge a lineup based on a purported dislike of the order of the photos, by claiming their position was prejudicial. Clearly, this cannot be allowed. As there was no possibility of police manipulation in this case, the photo array was not unduly suggestive, and properly admitted.

The information that led to [Appellant's] photo being placed in a lineup was that on February 7, 1997, Detective Senior received information from a reliable source that an anonymous black female had implicated [Appellant] in the robbery by name. Based on that information, a photograph of [Appellant] was inserted in a photo lineup, which was subsequently shown to another suspect and two of the victims.

Nothing about the manner in which the identifications took place was suggestive either. The photographic array was first shown to Jay Diaz, another suspect in the robbery and kidnappings. Diaz positively identified [Appellant]. Three lineups containing possible suspects were then shown to two of the kidnapping victims. Both positively identified [Appellant]. Although they were in the same house to view the photos, one victim was taken into the kitchen to view the photos while the other remained in the living room. There was no opportunity for them to consult with each other during the process of viewing the photos. No information was given by the Detective to suggest that the perpetrator's photo was or was not in the array. Clearly, based on three independent identifications of [Appellant's] photograph by another suspect and two of the victims, there was probable cause for an arrest warrant, and no reason to

- 13 -

suppress the identifications.

[Appellant's] second contention is that the evidence was insufficient to sustain the guilty verdicts returned by the jury. This is simply not the case. [Appellant] was identified, both in court, and from photographic arrays, by three of the kidnapping victims, one of his co-conspirators, and a police officer. In addition, the fact that [Appellant's] fingerprints were found on a newspaper in one of the vehicles used during the robbery provided circumstantial evidence of [Appellant's] participation in the crime.

The direct and circumstantial evidence taken together was more than sufficient to sustain the jury's verdict of guilty.

(Trial Court Opinion, filed November 17, 2004, at 3-5) (internal citations omitted). The record supports the trial court's analysis. Moreover, a sufficiency of the evidence claim must identify the specific element or elements of the offenses and how the evidence presented at trial failed to establish those offenses. *See generally Commonwealth v. Manley*, 985 A.2d 256 (Pa.Super. 2009), *appeal denied*, 606 Pa. 671, 996 A.2d 491 (2010). Here, Appellant does not actually single out those elements or crimes, which the Commonwealth failed to establish. Therefore, we decline to address Appellant's sufficiency claims in further detail. Following our independent review of the record, we confirm the appeal is frivolous. *See Palm, supra*. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/30/18</u>