J-S45018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN AYALA | : | |
| | : | |
| Appellant | : | No. 1905 EDA 2021 |

Appeal from the PCRA Order Entered September 13, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0005085-2012

BEFORE: OLSON, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                     **FILED MARCH 28, 2023**

Appellant, Jonathan Ayala, appeals from the September 13, 2021 order entered in the Court of Common Pleas of Philadelphia County, denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Appellant contends the PCRA court erred by denying him relief in light of trial counsel's ineffectiveness for failing to file a post-sentence motion based on weight of the evidence, for failing to conduct proper pre-trial investigation, for failing to object to the trial judge's decision to close the courtroom during trial, and for failing to seek reconsideration of Appellant's sentence. Upon review, we affirm.

Following trial in January 2015, Appellant was convicted of various offenses, including attempted murder, conspiracy to commit murder, and aggravated assault. He was sentenced to an aggregate term of 30 to 60 years

in prison, followed by 15 years' probation. He did not file post-sentence motions. On December 20, 2016, we affirmed his judgment of sentence. After reinstatement of his appeal rights, Appellant filed a petition for allowance of appeal *nunc pro tunc*, which our Supreme Court denied on October 18, 2019.

On August 3, 2020, Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended petition. The PCRA court issued a notice of intent to dismiss the petition in accordance with Pa.R.Crim.P. 907 and subsequently dismissed the petition on September 13, 2021. This timely appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents four issues for our consideration:

A. Trial counsel was ineffective for failing to file a post-trial motion that the verdict was against the weight of evidence.

B. Trial counsel provided ineffective assistance of counsel by failing to conduct a proper pre-trial investigation which would have uncovered available exculpatory evidence.

C. Trial counsel provided ineffective assistance by failing to object to the judge's decision to close the courtroom.

D. Trial counsel provided ineffective assistance for failing to file a motion for reconsideration of sentence.

Appellant's Brief at 8.[1]

---

[1] In his brief, Appellant suggests the PCRA court erred by failing to conduct an evidentiary hearing before dismissing his petition. **See** Appellant's Brief at 16-17. However, Appellant does not identify this issue in his statement of questions presented for review, nor is it fairly suggested by the questions he
*(Footnote Continued Next Page)*

The PCRA court summarized the underlying facts of this case as follows:

On September 3, 2011, Philadelphia Police Officer Howard Lee was sitting inside his patrol car outside 4210 Whitaker Avenue in the city and county of Philadelphia. At that time, Officer Lee heard gunfire coming from the rear of a night club named Casa De España, which was situated at that location. Officer Lee exited his vehicle and ran to the rear of the club. [Officer Lee heard more gun shots and saw numerous people running from the rear parking lot while screaming that the shots were coming from the rear of the club. Based on information learned from one of those individuals, Jose Pagan, Officer Lee went to a driveway leading onto Hunting Park Avenue where he saw a dark-colored car leaving the driveway at a high rate of speed.] Officer Lee notified police radio of the description of the car and its direction of travel. After the vehicle sped away, Officer Lee returned to the rear of the club to secure the crime scene. Upon his return, he observed Edwin Santana, with blood visible on his clothing covering his abdomen, outside the club. Officer Lee later gave a statement to police detectives detailing his activities that evening.

Police Officer Anthony Sampson was driving his patrol car eastbound on Whitaker Avenue at or about the time of the incident when he received a radio call informing him that shots had been fired at Whitaker and Hunting Park Avenues. He immediately proceeded to that location and upon arrival, he heard people screaming that there had been a shooting and three persons had been shot. Officer Sampson also observed a car traveling west on Hunting Park Avenue at a high rate of speed. The Officer made a u-turn after hearing several by-standers yell, "That's the car. That's the black car—an Acura." Officer Sampson, along with several other officers, pursued the vehicle. At one point, the driver of the car being pursued stopped briefly at Front and

_____

identified. Therefore, we shall not consider it. **See** Pa.R.A.P. 2116(a), which provides in pertinent part, "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Regardless, the right to an evidentiary hearing is not absolute and "[i]t is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence." **Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted).

Luzerne Streets but then sped away when Officer Sampson stepped out of his vehicle. Police finally stopped the vehicle when it crashed into a pole during the pursuit in the 4000 block of Front Street after a ten block high speed chase.

[Santana, who suffered multiple gunshot wounds, was taken to a nearby hospital for treatment. While there, he gave a statement to Philadelphia Police Detective James Perfidio, indicating that he had been in an altercation inside the club that spilled outside where he was approached by two individuals, one of whom shot him.] In his statement, Santana gave a description of the two males, the guns they used, and said that they fled in a black vehicle he believed was a Honda down Whitaker Avenue to Hunting Park Avenue. At trial, Santana completely disavowed having given the statement stating that he was high when he was shot and when he was interviewed by police. Detective [Perfidio] testified that Santana was awake and alert, did not appear to be under the influence, and that he signed his statements. He added that he recorded Santana's responses verbatim. Santana described his assailants as follows: One was a short Hispanic male with long braids wearing a blue shirt. The second guy was 5'11", Hispanic male, with short braids and a turquoise shirt.

Pagan was present when the shooting occurred. He related that he was inside the club with Santana, an acquaintance he knew as Chio, who got into a fight with a male after the male and Santana's girlfriend became involved in a dispute. After the fight, Pagan told Santana to leave because the person Santana fought with had been escorted from the club and he did not know who he was. Pagan and Santana then left the club to smoke a cigarette. When they got outside, two men approached from behind the building armed with a handguns. When Santana saw the two men, he told one of them to put his gun down and fight him "like a man." The men did not put down the guns but instead began firing at Santana. When they stopped shooting, the two males walked behind the building after [which] Pagan saw a dark sporty Honda speed out of the lot.

Shortly after the shooting, police transported Pagan to the location where the fleeing vehicle had crashed. Pagan identified the vehicle as the one he saw drive from the lot and told police that the two males police had in custody were the males he saw shoot Santana. Pagan also gave police a statement describing the person who shot Santana as having on a teal shirt with his hair in

braids. Pagan, however, could not identify where each individual was seated in the vehicle because they were already outside when he was brought to the location to identify them.

Police Sergeant David Pinkerton participated in the pursuit of the vehicle and prevented it from leaving after it became disabled. Sgt. Pinkerton approached the vehicle and observed its driver, later identified as [Appellant's] Co-defendant, who had braids and was wearing a teal greenish colored shirt, climbing from the driver's seat into the rear seat. Sgt. Pinkerton immediately placed Co-defendant in custody as other officers apprehended the front seat passenger, Appellant, who also was wearing a teal greenish colored shirt. The sergeant then secured the vehicle for later examination. As he did so he observed a black automatic handgun behind the driver's seat. The gun was secured and found empty of ammunition. Sgt. Pinkerton was present when Pagan arrived at the scene to identify Appellant and Co-defendant. Although the sergeant could not hear what Pagan said, he observed him shaking his head "yes" while pointing to Appellant, Co-defendant, and the vehicle. After Pagan identified Appellant and Co-defendant, Sgt. Pinkerton retraced the route of the pursuit. While doing so, he recovered a Glock in the general area where the . . . vehicle struck a utility pole as it fled police. He conceded that during the pursuit, he did not see the gun thrown from the vehicle.

Police obtained a search warrant for the vehicle. Upon executing the warrant, they seized the handgun, a .45 caliber Colt MK4, from the backseat. They also collected the Glock received by Sgt. Pinkerton on the highway as well as ten .45 caliber fired cartridge cases and a projectile in the rear parking lot of the club. Police observed bullet holes in the door of the club and recovered a bullet fragment inside the club. The ballistic evidence was later examined by Police Firearms Examiner Ann Marie Barnes. Her examination revealed that the ten (10) fired cartridge cases and the spent projectile had been fired from the Colt .45 recovered from the rear of the vehicle.

PCRA Court Opinion, 5/5/22, at 1-5.[2]

---

[2] The factual summary provided by the PCRA court is consistent with the trial court's summary as set forth in its January 21, 2016 opinion and adopted by this Court on direct appeal. *See Commonwealth v. Ayala*, No. 1313 EDA 2015, unpublished memorandum at 1-5 (Pa. Super. filed December 20, 2016).

As this Court has explained:

When reviewing the propriety of an order pertaining to PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA [c]ourt's legal conclusions.

***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa. Super. 2018).

In each of his four issues, Appellant contends trial counsel was ineffective.

[T]o prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (internal citations and quotations omitted). ***See also Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987).

To prevail on a claim of trial counsel ineffectiveness, "a petitioner must prove the existence of an arguable meritorious underlying claim, unreasonably deficient performance, and prejudice." Commonwealth Brief at 8 (citing ***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009) and ***Strickland v. Washington***, 466 U.S. 668 (1984)). "By definition, counsel cannot be found

ineffective for failing to raise a claim that lacks merit." **Id.** (citing, *inter alia*, **Commonwealth v. Jones**, 912 A.2d 268, 278 (Pa. 2006)).

In his first issue, Appellant argues trial counsel was ineffective for failing to file a post-sentence motion claiming the verdict was against the weight of the evidence. In its Rule 1925(a) opinion on direct appeal, the trial court recognized that a weight of the evidence claim must be raised in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Trial Court Opinion, 1/31/16, at 12 (citing **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa. Super. 2012)). Failure to preserve the claim results in waiver. **Id.**

Although the trial court recognized that the issue was not preserved and was therefore waived on direct appeal, the court explained that no relief would be due, even if the issue had been preserved. As the court explained:

> Accepting for the sake of argument that the sergeant's testimony contradicted testimony given by other witnesses, the verdicts do not shock the conscience because the evidence showed that Appellant[ and his co-defendant] were positively identified as having jointly participated in the attack on the victim Santana. This evidence coupled with the evidence showing that Appellant[ and his co-defendant] were both inside the fleeing vehicle seen speeding from the scene from which police seized weapons conclusively establishing that they were fired at the scene of the incident supports the jury's verdict. The evidence of guilt in this case was frankly overwhelming.

Trial Court Opinion, 1/31/16, at 12.

The PCRA court acknowledged that "[a] challenge to the weight of the evidence is addressed to the sound discretion of the trial court." PCRA Court

Opinion, 5/5/22, at 6 (citing **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000)). Further, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses." **Id.** (citing **Commonwealth v. Johnson**, 668 A.2d 97, 101 (Pa. 1995), *cert. denied*, 519 U.S. 827 (1996)).

In its brief, Commonwealth recognizes that "the trial court may award relief [on a weight of the evidence claim] only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Commonwealth Brief at 7 (quoting **Commonwealth v. Clemons**, 200 A.3d 441, 463 (Pa. 2019) (citation and internal quotation marks omitted)). Here, the trial court's statements, while *dicta*, establish that the trial court found the evidence of guilt overwhelming,[3] refuting any contention that the court's sense of justice was shocked or that a post-sentence motion based on weight of the evidence, if one had been presented to the trial court, would have been granted.

The PCRA court determined that Appellant's weight of evidence claim lacked arguable merit.[4] PCRA Court Opinion, 5/5/22, at 7. We find no error

---

[3] The PCRA court reached a similar determination regarding evidence of guilt, noting that "[t]he evidence presented at trial was extremely compelling." PCRA Court Opinion, 5/5/22, at 7.

[4] The court also concluded that Appellant failed to satisfy the prejudice requirement of the **Pierce** test. **See** PCRA Court Opinion, 5/5/22, at 7.

in that conclusion.  Because failure to prove any prong of the ineffectiveness test defeats the claim, *see* ***Spotz***, 84 A.3d at 311, Appellant's first claim fails.

In his second issue, Appellant contends that trial counsel failed to conduct a proper pre-trial investigation that would have uncovered available exculpatory evidence.  "Specifically, Appellant alleges there was a police officer at the scene that would have provided exculpatory evidence had he been investigated."  PCRA Court Opinion, 5/5/22, at 7.  However, Appellant fails to identify the officer, fails to provide an affidavit, fails to explain the exculpatory testimony the unnamed officer would have provided, and fails to provide evidence that the individual was willing or able to appear.

More importantly, in the course of a colloquy during trial, Appellant stated that he did not intend to testify, that he was neither forced nor threatened to make that decision, and that he made the decision of his own free will.  Notes of Testimony, Trial, 1/26/15, at 14-15.  The following exchanges then took place:

> THE COURT:  I have been advised by counsel you do not intend to call any witnesses, including character witnesses to testify on your behalf; is that correct?
>
> APPELLANT:  Yes.
>
> THE COURT:  Have you spoken with your attorney about that decision?
>
> APPELLANT:  Yes.
>
> THE COURT:  Are you satisfied with the representation of your attorney?

APPELLANT: Yes.

THE COURT: Okay. Thank you.

TRIAL COUNSEL: May I ask one more question of Mr. Ayala. **Mr. Ayala, at any time have you provided me with the names of any witnesses that you wanted to call in your trial that we have not?**

APPELLANT: **No.**

*Id.* at 15-16 (emphasis added).

In ***Commonwealth v. Pander***, 100 A.3d 626 (Pa. Super. 2014) (*en banc*), this Court explained:

> "Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way." [***Commonwealth v. Stewart***, 84 A.3d 701, 712 (Pa. Super. 2013) (*en banc*), *appeal denied*, 93 A.3d 463 (Pa. 2014)]. The failure to investigate "presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." ***Id.*** "It can be unreasonable *per se* to conduct no investigation into known witnesses." ***Id.*** Importantly, a petitioner still must demonstrate prejudice. ***Id.*** To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial. ***Commonwealth v. Dennis***, 597 Pa. 159, 950 A.2d 945, 961 (2008).
>
> In this respect, a failure to investigate and a failure to interview a witness overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. ***See Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297, 302 (2011) [following remand] (discussing failure to interview and call and alibi witness).

*Id.* at 638-39.

- 10 -

Here, while Appellant alleges trial counsel ineffectiveness for failure to interview the unnamed police officer, Appellant testified that he had not provided counsel with the name of any witness that Appellant wanted to call at trial. Again, as this Court in **Pander** recognized, while the failure to investigate a known witness can be unreasonable *per se*, "[i]mportantly, a petitioner must still demonstrate prejudice [by showing] that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial." **Pander**, 100 A.3d at 638-39.

Appellant has not only failed to identify the officer, but he has also failed to demonstrate any prejudice. In fact, while claiming prejudice, Appellant concedes, "we cannot predict with certainly whether the outcome would have been different." Appellant's Brief at 22. We find no error in the PCRA court's rejection of Appellant's claim of ineffectiveness for failure to investigate an unknown, unnamed witness. Appellant's second issue fails.

In his third issue, Appellant alleges trial counsel ineffectiveness for failing to object to the trial court's decision to close the courtroom. As the trial court explained, the courtroom was briefly closed after a juror was approached by an unidentified individual in the hallway outside the courtroom. That individual told the juror that one of the defendants was innocent.

The trial court found the issue waived for direct appeal based on lack of objection. Nevertheless, the court addressed it in its Rule 1925(a) opinion, rejecting Appellant's claim and stating:

- 11 -

Here, this Court took no such actions, as described by Appellant. To the contrary, upon being advised of the ascribed comment, the court simply conducted a colloquy of each juror on the record and with Counsel present to determine what, if any comment was made, to which Juror, by who[m] and what effect it may have had on the Juror.[4]  Case law supports the closing of the court room when someone attempts to influence a juror and the Court has no other way to assure that similar attempts to influence the jury would not recur.  *See* [*Commonwealth v. Berrigan*, 509 Pa. 118, 501 A.2d 226, 234 (Pa. 1985)] ("unmanageable," "boisterous," and "disruptive" members of the public can be barred to guarantee the orderly administration of justice). *Accord Commonwealth v. Phillips*, 946 A.2d 103, 109 (Pa. Super. 2008), allocatur denied, 964 A.2d 895 (Pa. 2009) (trial courts may always place reasonable restrictions on access to the courtroom where they perceive a threat to the orderly administration of justice by an unmanageable public).  Therefore, no error occurred here and it is respectfully suggested that if the Court deems that the issue had been preserved, no relief should be forthcoming.

> [4] Following the colloquy of the jurors, the court room was again opened to the public and remained so for the duration of the trial. That is likely the reason counsel never lodged an objection.  Had the Court known that one of the Appellants was going to raise as an issue on appeal a claim that his client's right to a public trial had been violated, the Court would have made it clear on the record the reason why the public was excluded during the colloquy and that the exclusion was of limited duration.

Trial Court Opinion, 1/21/16, at 14.

The PCRA court similarly rejected Appellant's argument, noting "this was a temporary, reasonable limitation on access, in accord with *Berrigan*.  As a result, Appellant fails to show that this claim has arguable merit and as a result cannot satisfy the first prong of *Pierce.*"  PCRA Court Opinion, 5/5/22, at 8.  We find no error in the PCRA court's conclusion.  Appellant's third issue fails.

In his fourth issue, Appellant argues that trial counsel provided ineffective assistance for failing to file a motion for reconsideration of sentence. Appellant does not assert his sentence was illegal. Rather, he contends it was "harsh and unreasonable" and points to the fact his co-defendant received a lesser sentence of incarceration. Appellant's Brief at 24. He claims he wanted trial counsel to file a post-sentence motion regarding his sentence but his counsel withdrew from the case without filing the motion. *Id.* He contends the issue was raised in his Rule 1925(b) statement on direct appeal but was deemed waived because it was not preserved in a post-sentence motion. A review of the Rule 1925(b) statement filed on direct appeal belies his contention. *See Commonwealth v. Ayala*, 1313 EDA 2015 (Appellant's Brief, 5/25/16, at Exhibit B).

Regardless, Appellant is not entitled to relief on this claim. As the PCRA court observed, "For all intents and purposes, this is a challenge to the discretionary aspects of sentencing. . . . 'Challenges to the discretionary aspects of sentencing are not cognizable under the PCRA.' *Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa. Super. 2007) (citing 42 Pa.C.S.A. § 9543(a)(2)(vii))." PCRA Court Opinion, 5/5/22, at 9 (footnote omitted).

Because the PCRA court properly recognized that a discretionary aspects of sentence claim is not cognizable under the PCRA, Appellant is not entitled to relief on his fourth issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/28/2023